STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-339

WILLIE EGGINS, JR., ET AL.

VERSUS

CHRISTUS HEALTH CENTRAL LOUISIANA

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 261,736
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

VAN H. KYZAR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, and Van H. Kyzar and J. Larry
Vidrine, Judges.

Cooks, Chief Judge, concurs with written reasons.

**AFFIRMED.**

**Eugene A. Ledet, Jr.**
**Brian Caubarreaux & Assoc.**
**2204 MacArthur Drive**
**Alexandria, LA 71303**
**(318) 442-0900**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Willie Eggins, Jr.**
  **Jerry M. Eggins**

**Brandon Ashley Sues**
**Gold, Weems, Bruser, Sues**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Christus Health Central Louisiana**

**KYZAR, Judge.**

In this medical malpractice action, Plaintiffs, the surviving children of Susie Mae Eggins, appeal the judgment of the trial court finding no breach of the standard of medical care by Defendant, Christus Health Central, d/b/a Christus St. Francis Cabrini Hospital, dismissing Plaintiffs' suit with prejudice.

## FACTS AND PROCEDURAL HISTORY

On April 24, 2018, Plaintiffs Willie Eggins, Jr. and Jerry Eggins, the children of Susie Mae Eggins (Ms. Eggins), filed suit against Christus Health Central, d/b/a Christus St. Francis Cabrini Hospital (Christus) alleging that Christus committed medical malpractice in its treatment of Ms. Eggins during her hospitalization at Christus on March 4, 2015.[1] Specifically, Plaintiffs aver that Ms. Eggins fell from her hospital bed, suffering a fracture to her right humorous and a lacerated forehead, and that the fall was the result of medical negligence in purportedly failing to take the necessary precautions to prevent a fall, failing to assure bedrails were in the upright position to prevent the patient from falling from the bed, failing to assure the bedrails were adequate to prevent the patient from falling around or through the bedrails, and other acts of negligence and deviations from the standard of care that caused and/or contributed to these accidents that will be shown at trial. The matter had previously been submitted to a medical review panel pursuant to La.R.S. 40:1231.8[2] which rendered an opinion that Defendant met the standard of care in its treatment of Ms. Eggins.

Christus filed a dilatory exception of vagueness and a motion to strike, asserting that Plaintiffs' allegations of nonspecific negligent acts asserted in its

---

[1] Susie Mae Eggins later died from conditions unrelated to her medical treatment by Christus.

[2] Prior to August 1, 2017, the provision was cited as La.R.S. 40:1299.49.

petition as "Other acts of negligence and deviations from the standard of care that caused and/or contributed to these accidents" was too vague such that it should be stricken from the pleadings. On June 14, 2018, pursuant to a consent judgment, the allegations were stricken from the pleadings. On May 18, 2020, Plaintiffs filed an amending and supplemental petition to state that "no individual cause of action exceeds $50,000.00, exclusive of interest and costs."

After a bench trial on the merits, the trial court rendered judgment and issued written reasons signed on October 9, 2020, finding that Plaintiffs failed to prove that Christus violated the standard of care in its treatment of Ms. Eggins. On February 5, 2021, the trial court denied a motion for a new trial. This appeal followed, wherein Plaintiffs assert two assignments of error:

> 1. [T]he Trial Court committed legal error in allowing family practitioner, Floyd Jones, D.O. to give opinion testimony on the plausibility of Susie Mae Eggins leaping over the side rails of her hospital bed although a functional quadriplegic[.]
>
> 2. [T]he trial court committed legal error in finding Christus St. Frances Cabrini Hospital did not deviate from the applicable standard of care in its treatment of Susie Mae Eggins[.]

## DISCUSSION

*Dr. Jones' Testimony*

In their first assignment of error, Plaintiffs argue that the trial court committed legal error in allowing family practitioner, Dr. Floyd Jones, to give opinion testimony on the plausibility of Ms. Eggins leaping over the side rails of her hospital bed although a functional quadriplegic.

"The district court is awarded vast discretion in its decisions on evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal absent a clear showing of abuse of that discretion." *Young v. Joy*, 09-756, p. 2 (La.App. 3 Cir. 2/3/10), 30 So.3d 1116, 1119. "Evidence is relevant if it has

2

any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Despaux v. RSC Equip. Rental Inc.*, 17-765, pp. 2-3 (La.App. 4 Cir. 4/25/18), 246 So.3d 806, 809, *writ denied*, 18-1009 (La. 10/8/18), 253 So.3d 794 (citing La.Code Evid. art. 401).

Dr. Jones was tendered and accepted without objection as an expert in the field of family practice medicine. Dr. Jones served on the medical review panel for the Eggins' case and was not hired by either of the parties to the suit. He testified that in preparation for his participation he reviewed the records of Christus related to the care of Ms. Eggins.

Dr. Jones was specifically asked if in his opinion, based on his review of the medical information that stated that the bed rails were up, whether the standard of care in that regard was met. Counsel for Plaintiffs objected. The basis of the objection was twofold: first, that Dr. Jones was not qualified to give expert opinion as to the standard of care in this case; and, second, that the testimony would be cumulative, given that two nurses had already given opinion testimony as to the standard of care. The trial court admitted the testimony, with provisions, stating, "I'll allow briefly some of it, but let's not go — 'cause no doubt you've been heavily invested in going through each of the documents through the nurses that are out there." Plaintiffs did not challenge this particular ruling on appeal. It is Dr. Jones' later testimony related to causation that Plaintiffs challenge here.

We note from the outset that the parties participated in the selection of a medical review panel for this case. Louisiana Revised Statutes 40:1231.8 C(3)(a) (b), (d) and (g) specifically provide for the composition of the medical review panel, calling for the appointment of one member by the plaintiff, one by the health care defendant, and the third being selected by the other two members. "If there is

5

only one party defendant which is a hospital, community blood center, tissue bank, or ambulance service, all panelists except the attorney shall be physicians." La.R.S. 40:1231.8(C)(3)(j). "The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care." La.R.S. 40:1231.8(G). "Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness." La.R.S. 40:1231.8(H). Thus, our law contemplates that a physician is competent to render opinions as to the standard of care of hospital defendants, as well as breaches of that standard of care, and causation, as is the case here.

An expert is permitted to testify and render opinions despite a lack of firsthand knowledge or observation. *Blair v. Coney*, 19-795 (La. 4/3/20), ___ So.3d ___. Further, the fact that Dr. Jones is an O.D., not a nurse, an M.S., or a specialist is not grounds for excluding his testimony. *Pertuit v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 14-752 (La.App. 5 Cir. 5/14/15), 170 So.3d 1106, *writ denied*, 15-1176 (La. 9/18/15), 178 So.3d 152. As recognized by the court in *Pertuit*, "where medical disciplines overlap, it is appropriate to allow a specialist in one field to give expert testimony as to the standard of care applicable to areas of the practice of medicine common to both disciplines." *Id.* at 1110.

In his testimony, Dr. Jones stated that he had been taking care of patients in a hospital setting for over forty years. During that time period he has never seen a hospital bed that was not equipped with side rails. During direct examination, Dr. Jones was asked "[c]an a patient fall out of a hospital bed even with the side rails

4

being appropriately used and without there being any fault on the hospital, on the part of the hospital and the nurses?" He replied, without objection, "[t]hey can." Later, during direct testimony, Dr. Jones was asked the following question: "Doctor, isn't it a plausible explanation for Susie Eggins falling out of the hospital bed with all four side rails being in place was that she had one of these episodes where she became very restless, agitated, rocking and shaking with tremors which caused her to go right over the top of the rails?" Counsel for Plaintiffs objected, asserting "Judge, how unsupported and unsubstantiated is this family doctor gonna come here and offer some pie in the sky explanation of how this . . . paraplegic who has very limited use of her legs suddenly leaped over the side rails[] sustaining a humerus fracture. . . [T]hat's about as absurd as it gets."

Following extensive argument, the trial court allowed the testimony but for limited purposes.

> I mean, that's what it sounded like. It's like, oh, yeah, if you lift one leg over, then all you got to do is this. I don't feel like he would have that expertise and that may be not where he was going, so I agree with Mr. Ledet in that he doesn't have that biomechanics, but in his experience and expertise as a family doctor has he treated or seen patients who have fallen? He can, he can certainly have knowledge of that and be able to speak to that, but how she got over or didn't or there was no rails, he's only just looking at the record.

Thereafter, the following exchange took place:

> Q. Uh, isn't it plausible, isn't it a plausible explanation for a patient falling out of the hospital bed with all, with all four side rails being in place, and this is a patient that's very restless, agitated, rocking, shaking with tremors, um, that could have, that could have caused her to go over the top of these rails?
>
> A. It could have.
>
> BY MR. LEDET: Objection, irrelevant.
>
> A. It could have.
>
> Q. That's a plausible explanation.

5

BY THE COURT: I'm, I'm gonna allow him. I'll weigh the relevancy of it.

Questions of admissibility of evidence generally, and particularly questions concerning the competency or qualification of a person to be a witness, or to testify as to a given matter, shall be determined by the trial court, and when the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. La.Code Evid. art. 104. Here, Dr. Jones testified that his experience with such matters was based on his almost forty years of experience with patients in a hospital setting, together with his review of the pertinent medical records of Ms. Eggins. Further, "[t]he preliminary determination by the court that evidence is admissible does not limit the right of a party to introduce evidence relevant to weight or credibility at the trial." *Id.* The trial court indeed specified that it would consider what weight, if any, to ascribe to Dr. Jones testimony as to this issue. Given that this was a bench trial as opposed to a jury trial, we can find no abuse of the broad discretion of the trial court in admitting the testimony. We further note that there is no indication from the written reasons for judgment that the trial court relied on this testimony of Dr. Jones in reaching its decision.

*Proof of Medical Malpractice*

Plaintiffs next assert that the trial court committed legal error in finding Christus did not deviate from the applicable standard of care in its treatment of Ms. Eggins.

"A hospital is bound to exercise the requisite standard of care toward a patient that the particular patient's condition may require and to protect the patient from external circumstances peculiarly within the hospital's control." *Smith v.*

6

*State through Dept. of Health and Human Resources Admin.*, 523 So.2d 815, 819 (La.1988). This includes the duty to protect a patient from dangers that may result from the patient's physical and mental incapacities, as well as from external circumstances over which the hospital has control. *Flournoy v. Our Lady of Lourdes Regional Medical Center, Inc.*, 17-81 (La.App. 3 Cir. 5/17/2017), 222 So. 3d 103.

In order to prevail in a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. In such a claim, the plaintiff must first establish the defendant health care provider's standard of care by a preponderance of the evidence. *Newsome v. Lake Charles Memorial Hosp.*, 06-1468 (La.App. 3 Cir. 4/4/07), 954 So.2d 380. Whether a hospital has breached those duties depends upon the circumstances and facts of the case. *Hunt v. Bogalusa Community Medical Center*, 303 So.2d 745 (La. 1974).

While Plaintiffs assert that the trial court committed legal error in determining that Christus did not breach the standard of medical care required in its treatment of Ms. Eggins, our review of a trial court decision as to whether a plaintiff established the appropriate standard of care and a breach thereof is pursuant to the manifestly erroneous, clearly wrong, standard of review. *Martin v. East Jefferson General Hosp.*, 582 So.2d 1272 (La.1991). We must only reverse a trial court's conclusion that a plaintiff failed to establish the appropriate medical standard of care or whether the provider breached that standard of care if there is no reasonable basis for the finding. *Goodwin v. Kufoy*, 07-737, p. 6 (La.App. 3 Cir. 1/16/08), 974 So.2d 815, 819, *writ denied*, 08-368 (La. 4/4/08), 978 So.2d 331.

7

Plaintiffs argue that based on the evidence surrounding the incident, Ms. Eggins, at approximately six-foot one-inches tall and two hundred and fifty pounds, did not slip through the cracks of the side rails, nor do they believe she rolled or climbed over the top of the side rails. They assert that the hospital bed upon which Ms. Eggins was lying either had no side rails or the rails were in a down position, resulting in the fall. Plaintiffs argue that the distinction is not relevant as a hospital bed without side rails, or with the side rails in a down position, constituted a deviation in the standard of care which then resulted in Ms. Eggins' fall. However, the trial court determined, as a matter of fact, that the evidence contradicts Plaintiffs' argument that there were no bedrails or that said bedrails were in the down position.

Each of the nurses involved testified that the bed Ms. Eggins was placed in had guardrails attached. Nurse Marilyn Thiels, who was in charge of ordering all hospital beds for Christus at the time, testified that every bed at the facility was from the manufacturer/supplier Hill Rom and that each one had four rails. If there was a problem with a particular bed within the facility, she was notified, such that she could appropriately address the issue. Ms. Thiels testified that she personally inspected the bed in question after the incident and that it did have four rails. Each of the nurses also stated that at the time of Ms. Eggins' incident, at least three of the rails on her bed were in the upright position. Each testified that if three or more rails of a bed are in the upright position, the standard of care is met.

This testimony was directly contrary to the testimony presented by Plaintiffs and LaSharna Eggins, a granddaughter who was left by Plaintiffs to be the primary caretaker of Ms. Eggins at the hospital during her stay. LaSharna testified that if there were rails on the bed, they were not up at the time of the incident. It is clear from the record that the trial court credited the testimony of the witnesses for

8

Christus and disregarded the testimony of Plaintiffs and LaSharna. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings[.]" *Id.* at 844. Here, the trial court issued written reasons for judgment, stating:

> Based upon the exaggerated statements of the granddaughter's conversations with her grandmother, this Court does not find any of the testimony of LaSharna credible. She was left by the family to be a caregiver, but she rarely rose to that obligation. Sadly, on the evening of the fall LaSharna remained laying on the sofa with a blanket over her head.

Such was in the province of the trial court, who is in the best position to hear and see the witnesses as they testify and to make credibility calls based on their demeanor and their mannerisms. *Id.* Where a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

Plaintiffs further contend that the trial court improperly applied the doctrine of res ipsa loquitor, which they claim should have resulted in a favorable judgment on liability in this instance. Louisiana Revised Statutes 9:2794(C) provides that, in medical malpractice actions, "the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the [health care provider]" and that "injury alone does not raise a presumption of the [health care provider's] negligence." It further states that "[t]he provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable."

9

In *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654 (La.1989), *holding modified by Linnear v. CenterPoint Energy Entex/Reliant Energy*, 06-3030 (La. 9/5/07), 966 So.2d 36, the supreme court addressed the application of the doctrine as it applies to medical malpractice actions.

> The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses. The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence.
>
> Additionally, the doctrine does not dispense with the rule that negligence must be proved. It simply gives the plaintiff the right to place on the scales, "along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence" sufficient to shift the burden of proof.
>
> The doctrine applies only when the facts of the controversy "suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." The doctrine does not apply if direct evidence sufficiently explains the injury.

*Montgomery v. Opelousas Gen. Hosp.*, 540 So.2d 312 (La.1989) (citations omitted).

> As provided by La.R.S. 9:2794(C), the court determines the applicability of res ipsa loquitor in medical malpractice actions. (citations omitted)

*Id. at* 660 (footnote omitted).

*Cangelosi* was clarified by the supreme court in its decision in *Linear*, 966 So.2d 36, 43-44 (emphasis in original), wherein the court stated as follows:

> However, we recognize that the language in *Cangelosi* is not quite as clear as it could be and evidently led to confusion in this case.

10

Thus, some clarification is necessary. *Cangelosi* simply requires the trial judge to undertake the following analysis. In cases involving only circumstantial evidence, *res ipsa loquitur* may be applicable, if the trial judge sequentially determines that the three criteria for its use are satisfied. The three criteria are: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff. As *Cangelosi* instructs, the trial judge determines whether reasonable minds could differ on the presence of **all three criteria.** If reasonable minds could not conclude that all three criteria are satisfied, then the legal requirements for the use of *res ipsa loquitur* are not met.

Virtually all of the medical records reflect that during Ms. Eggins' hospitalization, she was placed in a bed with rails, of which the rails were in the up position, with at least two upper rails in place at all times and at least one lower bed rail in place. We note that the medical records of March 2, 2015 reflect Dr. Garcia checking in on Ms. Eggins during rounds, and she reported no problems nor did she report any issues with the hospital bed. The records also note that Ms. Eggins had "severe jerking with bilateral legs." Nursing staff discussed one-on-one care with Ms. Eggins' granddaughter, with a nursing tech and nurse also at the bedside.

The evidence from the medical records admitted at trial reflects that on March 4, 2015, the date of the incident, each time nursing rounds were made, which were done at two-hour intervals, both upper bed side rails and at least one lower bed side rail remained in upright positions. At 6:00 a.m., Ms. Eggins was noted to be alert, with no pain complaints, although she was stated to be very restless and agitated. Dr. Garcia was paged for medications, and Ms. Eggins' linens were changed, as she was wet. Morphine sulfate was ordered and administered to Ms. Eggins at 6:45 a.m. The two upper bed side rails and lower bed side rail remained in place.

11

Within 5 minutes of the last notation in the medical records, at approximately 6:50 a.m., LaSharna called out "She's on the floor." When nurses arrived at the room, however, LaSharna was not tending to her grandmother, but was on the couch with a blanket over her head. Despite reporting the incident, LaSharna testified that she did not see the incident unfold and could offer no testimony as to how the fall occurred. She also disputed the nurses' testimony that she was on the couch with a blanket over her head when they arrived at the room, claiming instead that she was standing up near the doorway when they arrived.

While Plaintiffs assert that only Dr. Jones stated that a fall out of a hospital bed can occur despite the hospital meeting its standard of care, we note that Nurse Thiels also voiced this same opinion.

> Q. In the event report, on page 760 and at 761, there's an indication of the bed rails were up times four.
>
> A. Yes, sir.
>
> Q. Um, in your opinion, uh, does that meet the standard of care?
>
> A. Yes.
>
> Q. And you, you've read through this note before, uh, in terms of what was done after the fall.
>
> A. Yes.
>
> Q. Do, do you agree everything after the fall was done appropriately within the standard of care?
>
> A. Yes.
>
> Q. In, in your opinion, um, if the bed had three rails up at the time of the fall would that still meet the standard of care?
>
> A. Yes.
>
> Q. In your experience as a nurse, can a patient fall out of a hospital bed even with the side rails being appropriately used?
>
> A. Yes.

As noted above, the record contains ample evidence and testimony that the standard of care required at least three bedrails in place and upright. The evidence offered was more than sufficient to establish that at least three rails were actually in place at the time of the incident. The trial court's findings given this evidence reflect that Plaintiffs did not meet one of the three required criteria for the application of the doctrine of res ipsa loquitor, namely that the "injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part[.]" *Linear*, 966 So.2d at 44. Further, the possibility of third-party fault was not eliminated, as LaSharna was in the room leading up to and at the time of the fall and had previously been instructed as to the one-on-one care requirements for Ms. Eggins.

In an analogous factual situation, this court in *Williams v. Sisters of Incarnate Word of Galveston, Tex.*, 341 So.2d 1299 (La.App. 3 Cir. 1977), found the defendant hospital free from negligence for injuries sustained by a 13–year old patient, who fell when returning to bed after her mother insisted upon helping her take a shower. There, the attending nurse had left the room in light of the mother's oversight of the child. This court noted that the hospital's duty was limited; that the hospital was not the "insurer of a patient's safety" and, therefore, not required to guard against that which a "reasonable person under the circumstances would not anticipate as likely to happen." *Id at* 1300. Accordingly, we found that the attending nurse was reasonable in her assumption that the child's mother would attend to the patient properly and not allow her to fall. *Id.*

Here, Defendant established the requisite standard of care applicable to its care of Ms. Eggins. Defendant further established that it met that standard of care. Finally, the evidence presented by Defendant at trial established that the incident in question could occur, even in the absence of negligent treatment on the part of the

13

hospital. Accordingly, the trial court did not err in its refusal to apply the doctrine of *res ipsa loquitor*.

The record contains sufficient independent evidence and testimony establishing the standard of care owed by Christus to Ms. Eggins. With the standard of care established, requiring the use of at least three bed rails in the upright position, Plaintiffs failed to establish a breach of that standard of care, particularly given the trial court's reliance on the testimony of the attending nurses and its credibility determinations, discounting the testimony of LaSharna. *See Rosell*, 549 So.2d 840. Accordingly, we affirm the ruling of the trial court.

## DECREE

The judgment of the trial court in favor of Christus Health Central, d/b/a Christus St. Francis Cabrini Hospital, dismissing Plaintiffs' suit with prejudice, is affirmed. All costs of this appeal are assessed to the Plaintiffs, Willie Eggins, Jr. and Jerry Eggins.

**AFFIRMED.**

**WILLIE EGGINS, JR., ET AL**

**VERSUS**

**CHRISTUS HEALTH CENTRAL LOUISIANA**

**COOKS, Chief Judge, Concurs.**

The medical evidence shows that Susie Eggins (Susie) was a functional paraplegic, meaning she could not walk but had involuntary movement of her legs and could not use her arms. Before this hospital stay, Susie lived at her son Willie's home. He testified that Susie suffered from tremors and severe, jerking movement of her legs, especially her right leg, which he said often caused her to throw her right leg off the side of her hospital bed at home. Susie's nurse caretaker also testified that Susie was prone to these involuntary movements of her legs and to uncontrolled tremors and shaking. The medical record corroborated this testimony and shows Susie was administered medication for this condition during her hospital stay. Plaintiffs failed to present any expert testimony to establish the applicable standard of care for a patient with Susie's condition and thus failed to meet their burden to prove that Defendant violated the appropriate standard of care and that such failure caused resulting harm to Susie. For example, a bed different from the type used or the use of other restraining apparatus may have been necessary to safeguard Susie.